UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| POLAVAA N.,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, et al.,<br><br>    Defendants. | Case No. 23-cv-02699-RMI<br><br>**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, 19 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability benefits under Title II of the Social Security Act. *See* Admin. Rec. at 2468.[1] The Appeals Council of the Social Security Administration declined to review the ALJ's decision. *Id.* at 2438. As such, the ALJ's decision is a "final decision" of the Commissioner of Social Security, appropriately reviewable by this court. *See* 42 U.S.C. § 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 10, 11) and both parties have moved for summary judgment (dkts. 16, 19). For the reasons stated below, Plaintiff's Motion for Summary Judgment is GRANTED IN PART and Defendant's Cross-Motion for Summary Judgment is DENIED.

## LEGAL STANDARDS

The Social Security Act limits judicial review of the Commissioner's decisions to final decisions made after a hearing. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* A district court has limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if

---

[1] The Administrative Record ("AR"), which is independently paginated, has been filed in nine attachments to Docket Entry #12. *See* Dkts. 12-1 through 12-21.

it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**BACKGROUND**

This case is over a decade old. *See* AR at 120 (initial administrative denial of Plaintiff's Social Security benefits took place in 2013). It has produced three ALJ decisions, each of which has been appealed to the district court. Two of those appeals—to Judge Maria-Elena James in 2018 and to Judge Jacqueline Corley in 2021—resulted in remand with instructions to reevaluate, among other things, the opinion of Dr. Katherine Wiebe, who performed a series of psychological tests on Plaintiff in 2015, and whose resulting opinion was improperly discounted in the first two ALJ opinions.

Plaintiff alleges that she suffers from depression and anxiety as well as diabetes, back pain, obesity, and other physical impairments.[2] On remand following Judge James's decision, the ALJ determined that Plaintiff became disabled on November 1, 2017, due to her physical conditions, but that she had not been disabled earlier. AR at 1844, 1846. Plaintiff appealed this result to Judge Corley, who again remanded with instructions to reevaluate much of the evidence, including

---

[2] The Court will not endeavor to comprehensively summarize the 3,214-page record in this matter. Readers unfamiliar with the case's factual and procedural history may wish to review the previous decisions: *Noa v. Berryhill*, 2018 WL 1696819 (N.D. Cal. April 6, 2018); and *Polavaa N. v. Saul*, 2021 WL 1118074 (N.D. Cal. March 24, 2021).

2

Dr. Wiebe's testimony, which had been improperly discounted. *Id.* at 2573–74. On remand following that decision, the ALJ again discounted Dr. Wiebe's testimony on a variety of grounds. *Id.* at 2476–78. On appeal to this Court, Plaintiff argues (among other things) that the ALJ's latest failure to credit Dr. Wiebe's opinion was unjustified. Because the treatment of Dr. Wiebe's opinion is dispositive on the issue of remand, this Order will focus on that issue.

## ANALYSIS

Due to the age of this case and the time period for which benefits are requested, the medical evidence in the record will be analyzed under a since-superseded standard which takes into account the relationship between the patient and the doctor rendering an opinion. For purposes of this case, therefore, "[t]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record," and the ALJ "must provide 'clear and convincing' reasons for rejecting an uncontradicted opinion of an examining physician." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). The Court will take the ALJ's reasons for discrediting Dr. Wiebe's report in turn.

   *a. Lack of Record Evidence and Inference of Bias*

The ALJ found that "the overwhelming evidence from the treatment records shows no mental health symptoms, and the only evidence of any mental health impairment is the report from the psychologist retained by the claimant's representative, Dr. Wiebe, to help support the SSI application[.]" AR at 2476. The Court finds no substantial evidence to support this assertion.

The ALJ made much of the fact that Plaintiff's disability claims did not mention mental illness until she engaged new representatives, who hired Dr. Wiebe to examine Plaintiff "as they routinely do". AR at 2476. However, the mere fact that Dr. Wiebe was engaged by Plaintiff is not a proper ground on which to discount her findings. "An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the commissioner." *Lester*, 81 F.3d at 832.[3] The Court is aware that the Commissioner, too,

---

[3] Besides being the law of the Ninth Circuit, this principle is the law of this case. AR at 1946 ("Absent evidence undermining the credibility of Dr. Wiebe's report, the fact it was obtained based on

3

"routinely" hires consultative examiners, and has not previously noted ALJs to discount the opinions of the Commissioner's examiners on the basis of this practice. Accordingly, this is not a legitimate reason to discount Dr. Wiebe's analysis.

Further, while the ALJ concluded that Dr. Wiebe's report represented the only evidence of a mental health impairment, the record prior to Plaintiff's October 2015 evaluation by Dr. Wiebe shows otherwise:

- Home healthcare providers who treated Plaintiff in late 2012 and early 2013 following her hysterectomy reported symptoms of depression. One said that Plaintiff "easily gets upset but tried to calmed [sic] down to manage emotion". AR at 785. Another recorded that Plaintiff had not been eating regularly and did not have an appetite; the same day, a third provider noted that Plaintiff "seemed depressed [but] motivated to get better". *Id.* at 818, 888. In February 2013, a home health nurse noted that Plaintiff "appears depressed, but denies when asked" and scored a 0 on a depression questionnaire. *Id.* at 990–91. By the next month, however, her score had increased to a 2, with a score of 3 or higher needing to be reported back to the hospital. *Id.* at 1048. Treating notes from the home health service indicate that Plaintiff had "moderate to severe depression". (902).

- Dr. Brooks, Plaintiff's oncologist, noted in early January 2013 that Plaintiff was "[f]eeling sad given difficulty with wound and slow healing process." AR at 679. A week later, Dr. Brooks elaborated that Plaintiff "has very flat affect, appears to be depressed. Symptoms and treatment options discussed at length. Patient declined interventions and reported she would call our office if she felt she needed help." *Id.* at 708. Subsequent visit notes also reflect depression, as well as the fact that Plaintiff "denied pharmacological intervention and feels she has good support." *Id.* at 454, 530, 547, 700. Over the next year, although Plaintiff reported her mood was stabilizing, Dr. Brooks noted specific symptoms of depression, including a flat affect and weight gain. *Id.* at 1197–98, 1283, 1330.

- Plaintiff discussed disordered eating and suicidal ideation, both symptoms of depression,

Plaintiff's request is not a legitimate reason for rejecting it.").

4

with her primary care provider in February 2013. AR at 330. She also complained of another depression symptom, fatigue, in 2014 and 2015. *Id.* at 1342–43, 1580. At one point, Plaintiff said that she was too sleepy to check her blood sugar regularly. *Id.* at 1580.

- At least two separate healthcare providers in 2014 noted Plaintiff as either experiencing or having experienced depression. AR at 1806 (during evaluation for leg and back pain in January 2014), 1603 (intake for a new medical provider in August 2014).

The ALJ noted that he did not credit Dr. Wiebe's analysis because other doctors had observed Plaintiff to have a normal affect and mood and no psychological or behavioral symptoms: "Certainly, if the claimant were experiencing significant mental health symptoms during this time, someone would have picked up on it." AR at 2476. As noted *supra*, however, several different providers *did* pick up on it. Further, the other doctors the ALJ mentions were not performing full psychological evaluations, but rather making cursory observations relating to Plaintiff's mood, affect, and behavior as part of the intake process before treating her for a physical condition. As Judge James noted, these observations were "made by . . . treating physician[s] who d[id] not specialize in mental health and w[ere] examining Plaintiff for [conditions such as] back pain[.]" *Id.* at 1945. Therefore, the ALJ's determination that the record does not reflect mental health symptoms during the time period at issue is not supported by substantial evidence.

b. *Effect of Non-Severe Findings*

The ALJ noted that Dr. Wiebe's report contained many normal or near-normal findings related to Plaintiff's cognitive functioning: "mild to moderate impairment in memory, minimal impairment in executive functioning, and no impairment in attention and concentration[.] The claimant's functioning in the language domain and visual/spatial abilities domain was also normal[.]" AR at 2476. But despite these normal findings, Dr. Wiebe "opined severe deficits in short-term memory . . . and marked limitation on completing a workday or workweek without interruptions from psychological symptoms." *Id.* In the ALJ's view, "[t]he doctor does not adequately bridge the gap between minimal impairment in executive functioning and no impairment in concentration and attention with a marled [sic] limitation in completing a workday

5

or workweek. This minimal, self-contradictory report does not overcome the voluminous treatment record." *Id.* at 2476-77. However, this Court finds that substantial evidence does not support the ALJ's assessment of Dr. Wiebe's findings.

First, as Judge James noted in 2018, the "voluminous treatment record" against which the ALJ weighs Dr. Wiebe's findings as to Plaintiff's memory and attention capabilities consists of cursory observations by nonspecialists whom Plaintiff was seeing for other concerns. AR at 1945. Second, as Judge Corley noted in 2021, the fact that Plaintiff has mild limitations in some areas does not contradict the existence of severe impairments in others. *Id.* at 2573. Third, the one contradiction the ALJ describes—mild to moderate impairment in memory, but a severe deficit in short-term memory—is resolved by reference to Dr. Wiebe's report, which says that although Plaintiff is able to learn information with repetition and memory cues, she scored extremely low (well below the first percentile) for immediate memory. *Id.* at 1652.

Fourth, Dr. Wiebe's evaluation indicates several psychological symptoms which could interrupt the workday or workweek: "she frequently behaves incompetently and disconsolately, thereby driving others away", *id.* at 1656; she "may be apprehensive about trivial matters", *id.* at 1657, or "act in a petulant and self-pitying manner", *id.* at 1655; "[h]er discontent and moodiness frequently invoke critical if not humiliating reactions from others", *id.* at 1656; and "a rather innocuous critical remark may set into motion obsessive worrying and brooding", *id.* Significantly, Dr. Wiebe also noted that Plaintiff suffered from depressive fatigue. *Id.* at 1650. In short, "[h]er psychiatric and personality disorder problems . . . could affect her ability to relate to and communicate effectively with others,[4] including supervisors, coworkers, and the public, and to adhere to the demands of a regular work schedule." *Id.* at 1658.[5] These symptoms, as Judge

---

[4] The ALJ expressed doubt about this assertion, saying "[n]either Dr. Wiebe's report nor Dr. Martin's report noted any difficulties getting along with the people she lived with". However, this is incorrect. Dr. Wiebe's report says that Plaintiff "is socially isolated except for spending time with family members, *with whom she experiences conflicts*" and that "[h]er though content tended towards concerns about conflicted relations with family members." AR at 1649–51 (emphasis added).

[5] The fact that "Dr. Wiebe described the claimant as cooperative, and stated she put forth good effort during psychological testing," AR at 2477, does not contradict this conclusion as the ALJ asserts it does. Dr. Wiebe specifically found that Plaintiff could become moody, petulant, and incompetent due to her mental illnesses. The fact that Plaintiff did not exhibit such symptoms during a three-hour examination

6

Corley noted, could interrupt the workday or workweek, and the ALJ did not appear to consider these symptoms as potential supporting evidence, as Judge Corley directed him to on remand. *Id.* at 2573. Accordingly, substantial evidence does not support the ALJ's decision to discount Dr. Wiebe's conclusions based on the presence of normal function in some areas.

   *c. Mention of Childhood Abuse*

   The ALJ further attempts to discredit Dr. Wiebe's report by stating that "while Dr. Weibe [sic] indicated the claimant 'experienced being emotionally neglected and abused during her childhood,' she does not record that the claimant actually said that to her, and she did not diagnose any trauma-related disorder." AR at 2477. By contrast, per the ALJ, "Dr. Martin states plainly that the claimant 'denied a history of emotional, physical, or sexual abuse as a child." *Id.* To the ALJ's way of thinking, "[t]his further undermines the reliability of Dr. Weibe's [sic] report." *Id.* However, Dr. Wiebe did not simply assert out of the blue that Plaintiff had been maltreated as a child; her report noted that Plaintiff's "grandmother disliked her and made her do all the household chores". *Id.* at 1649. Indeed, Dr. Wiebe quoted Plaintiff as saying this treatment was what first caused her to wish she was dead: "When I was living with my grandmother—probably w[he]n 10 or 11 years old—just knowing the way you were treated . . . You felt like you where [sic] treated differently. And it really didn't help when your parents were not really there with you." *Id.* at 1653–54. The fact that Plaintiff did not use the word "abuse" in her description of her childhood is an improper ground on which to discount Dr. Wiebe's conclusion that Plaintiff was abused. Further, the ALJ cites no authority for the proposition that all abuse victims suffer from a trauma disorder or that the psychological effects of abuse are limited to trauma disorders to the exclusion of depression and anxiety. With all that said, it is unclear why the ALJ credited Dr. Martin's brief note of a denial of abuse (which might have been the product of Plaintiff's unwillingness to discuss traumatic events or Plaintiff's failure to recognize the conduct as abuse) over the description of abusive conduct provided in Dr. Wiebe's evaluation. Therefore, the

---

does not mean that she would not exhibit such symptoms over an eight- or forty-hour interval in a more stressful environment. The same holds true for similar observations made by other care providers. *See also id.* at 1945 (opinion of James, J.) ("The ALJ does not explain why even severe depression would prevent Plaintiff from being pleasant and cooperative during a medical appointment.").

7

1  mention of Plaintiff being abused is not a legitimate ground on which to discount Dr. Wiebe's
2  opinion.

   *d. Structured Environment Disclaimer*

   The ALJ also faults Dr. Wiebe for having "asserted, without support or explanation, that the claimant's ability to perform tasks under a structured assessment does not necessarily reflect her performance in a regular work environment." AR at 2478. In the Court's experience, however, this is a standard disclaimer included in many (if not most) evaluations of this type. Such disclaimers restate the basic scientific principle that findings obtained from structured experiments may not translate perfectly to the realities on the ground. The Court therefore finds no substantial evidence supporting the following trail of logic by the ALJ:

> It is unclear, then, what Dr. Wiebe viewed the point of these tests to be. If the doctor, retained by counsel, finds such testing only of value in demonstrating impairment but discounts if it [sic] without significant explanation if it demonstrates lack of impairment, this weighs against giving any significant weight to the opinion.

*Id.* at 2478.

   *e. Adapting and Managing Oneself*

   The ALJ asserts that the only evidence of Plaintiff having difficulty adapting or managing herself is in Dr. Wiebe's report, "and that evidence is self-contradictory, at best." AR at 2478. The ALJ characterized Dr. Wiebe as "vaguely" stating that Plaintiff had "some impairment in reasoning, insight, and judgment associated with her psychiatric problems". *Id.* The ALJ found this to be contradicted by the fact Plaintiff had presented to examiners with adequate grooming, fair insight and judgment, and a cooperative attitude. *Id.* However, as discussed above, Dr. Wiebe specifically concluded that Plaintiff was likely to act irrationally and counterproductively at times due to her mental illness. Further, the record in this matter reflects several times where Plaintiff has acted against her best medical interests due to her mental health symptoms. Most notably, Plaintiff declined depression medication against medical advice because she was afraid of the side

effects and convinced herself that she was not really depressed.[6]  *Id.* at 57–58, 1650.  Accordingly, substantial evidence does not support this reason for discounting Dr. Wiebe's conclusions.

      *f.  Failure to Seek Treatment*

The ALJ weighed Plaintiff's failure to seek mental health treatment against Dr. Wiebe's conclusions, stating that Plaintiff's failure to seek psychiatric treatment and her treatment providers' failure to hospitalize her for depression "suggest[] that her treatment providers did not view her mental health as a significant issue in her overall wellbeing."  AR at 2478.  But to echo Judges James' critique of the first ALJ opinion in this matter, "Plaintiff's lack of treatment for depression does not provide a specific and legitimate reason to reject Dr. Wiebe's diagnoses nor her assessment of Plaintiff's mental health impairments on her ability to perform work-related tasks."  *Id.* at 2574.  Judge James further quoted *Nguyen v. Chater* to decry the "questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  *Id.* (quoting *Nguyen*, 100 F.3d 1462, 1465 (9th Cir. 1996)).  And to echo Judge Corley's critique of the *second* ALJ opinion in this matter, which included a block quote of Judge James's original critique:

> This remains equally true now.  The ALJ cannot simply rely on Plaintiff's failure to obtain mental health treatment.  *See Nguyen*, 100 F.3d at 1465 ("the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [the doctor's] assessment of the claimant's condition is inaccurate.").

*Id.* at 2574 (alterations in original).  And so, to reiterate: the fact that Plaintiff did not accept the help offered to her is not a reason to discount her mental illness symptoms.  The fact that Plaintiff's treating providers did not (and likely could not) force her to accept such help does nothing to alter this general principle.  Accordingly, this was not a legitimate ground for discounting Dr. Wiebe's opinion.

---

[6] There are other examples as well: At Plaintiff's first Social Security hearing, she noted that she declined pain medication despite experiencing "very much" pain because she was afraid of becoming a drug addict.  AR at 55.  One nurse noted that Plaintiff was "concerned" at the prospect of being referred to a specialized wound-care clinic for her slow-healing hysterectomy wound.  *Id.* at 1051.

*g. Tentative Wording of Findings*

The ALJ also criticized Dr. Wiebe's report for containing too much conjecture. The ALJ's opinion took issue with the tentative wording of some of Dr. Wiebe's conclusions: "She probably believes that it is best to abdicate responsibility, to leave matters to others, and to place her fate in others' hands"; "She may evince a diminished capacity for pleasure that may be accompanied by sleep difficulties and a poor appetite that may indicate an anorexic pattern", "She yearns for acceptance and affection from others, but her hopes appear to be waning rapidly". AR at 2478 (emphasis by ALJ). The ALJ called this "poetic boilerplate" which "does not provide information on the claimant's actual functioning, particularly given the lack of significant findings in objective testing and the inconsistency with the treatment record." *Id.* However, the Ninth Circuit has held that "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology". *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (internal quotations omitted). Further, the conclusions the ALJ challenges were taken from an interpretive profile based on Plaintiff's results on "the MCMI-III, an objective test of psychiatric functioning." AR at 1655; *see also Buck*, 869 F.3d at 1049 (clinical interviews "are objective measures"). It is therefore not accurate to say that objective testing yielded no significant findings. As for consistency with the treatment record, the Court directs the reader to its previous comments on similar observations.

Accordingly, the wording of some of Dr. Wiebe's findings is not a legitimate basis on which to discount Dr. Wiebe's opinion.

*h. Opinions of Other Doctors*

Besides Dr. Wiebe's report and the observations of non-psychiatric treatment providers, discussed above, the medical record regarding Plaintiff's mental illness consists of the opinions of one examining doctor (Dr. Martin) and two non-examining doctors (Dr. Amado, a consultant for California's state benefits agency, and Dr. Peterson, a consultant engaged by the Social Security Administration). The Court will review these opinions to determine what impact, if any, they may permissibly have on the weight given to Dr. Wiebe's opinion.

1. Dr. Martin

10

Dr. Martin was a consulting examiner engaged by the Social Security Administration to provide a mental status report for Plaintiff. AR at 2133. The examination was conducted in March 2018. *Id.* Dr. Martin assessed Plaintiff with a number of "marked" limitations, including completing a workday or workweek without interruptions and dealing with the usual stresses of a competitive work environment. *Id.* at 2135. However, he assessed Plaintiff's memory as "adequate" based on a single test and said that her insight and judgment were "fair". *Id.* at 2134.

The ALJ's opinion began its discussion of Dr. Martin's report by noting that Dr. Martin examined plaintiff "in March 2018—well outside the period currently under consideration". AR at 2477. However, the "period under consideration" only ended on November 1, 2017, the date when the ALJ previously determined that Plaintiff became disabled due to her physical condition. The Ninth Circuit "has specifically held that medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Lester*, 81 F.3d at 832 (internal quotations omitted). The Court sees no reason why the same principle should not apply in the context of the date on which Plaintiff was found disabled based on non-psychological conditions.

The ALJ's opinion noted that, despite the lack of records to review, Dr. Martin "did not perform any testing, and only conducted a Mental Status Exam and a 'Complete Psychological Evaluation' . . . . This last, despite the capitalization, does not appear to be a recognized procedure or test." AR at 2477. Setting aside the question of why an "exam" and "evaluation" would not qualify as "testing," *Buck* makes clear that relatively imprecise tools, to include clinical interviews, may constitute "objective evidence" of mental illness. The ALJ further noted that Plaintiff's score on the mental status exam was largely normal, *id.* at 2477; however, as previously discussed, the presence (or even preponderance) of normal findings says nothing about whether the *ab*normal findings indicate a disability. Finally, the ALJ cited Dr. Martin's report that "the claimant was cooperative, eye contact was fair, facial expression was normal" and concluded that it was "thus entirely unclear how Dr. Martin came to the diagnoses or conclusions listed. It appears to be based entirely on the claimant's self-report of symptoms." *Id.* However, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to

11

1  opinions regarding mental illness." *Buck*, 869 F.3d at 1049. Further, Dr. Martin noted that
2  Plaintiff exhibited a "bored" mood and restricted affect. AR at 2134. And, again, the ability to be
3  "cooperative" at a medical appointment does not necessarily translate to a lack of symptoms in a
4  higher-stress, lower-structure environment. *Id.* at 1945.

5      While the slightly out-of-date evaluation time and the opaque nature of Dr. Martin's
6  conclusions might be grounds for discounting Dr. Martin's opinion, the Martin report does not
7  contradict the Wiebe report to more than a marginal degree. "If anything, the similarity of their
8  conclusions provides reason to credit the opinions of both." *Lester*, 81 F.3d at 832. In any event,
9  to the minimal extent that the opinions do conflict, the ALJ has not provided specific reasons for
10 crediting portions of Dr. Martin's conclusions over those of Dr. Wiebe.

11     2. <u>Dr. Amado</u>

12     Dr. Amado, a non-examining consultant for a state benefits agency, found Plaintiff's
13 mental illnesses to be "Non Severe" with only "Mild" limitations in the B criteria. AR at 1961–
14 62. Explaining this decision, Dr. Amado noted that Plaintiff "advances mostly physical
15 allegations", "has never had specialty mental health care, and declined offer of psych meds in
16 primary care setting." *Id.* at 1962. Dr. Amado said that the "only evaluation on file" was Dr.
17 Martin's; there is no indication that Dr. Amado knew about the Wiebe evaluation. *Id.* Dr. Amado
18 said that Dr. Martin's determination was "clearly over-restrictive when looking at the much more
19 benign MSE findings (no signs of major psychopathology) and mostly physical functional
20 limitations." *Id.* The ALJ gave Dr. Amado's admittedly "brief" opinion "substantial weight"
21 because it "accurately describes the state of the record and the clear inconsistency within the
22 consultative examination report." *Id.* at 2479. This was error.

23     First, Dr. Amado did not "accurately describe the state of the record" before the ALJ in
24 that Dr. Amado appears to have been unaware of the Wiebe evaluation. Second, Dr. Amado's
25 analysis appears to suffer from errors that this Court and the other judges in this matter have
26 identified in this and previous ALJ opinions: holding Plaintiff's lack of mental health treatment
27 against her claims of mental illness and dismissing her mental health symptoms because Plaintiff's
28 functional limitations are "mostly physical". AR at 1945 (opinion of James, J.) (criticizing the

1    first ALJ for concluding that Plaintiff's limitations "appear chiefly related to her physical

2    conditions" without explaining the basis for that conclusion).  And finally, while Dr. Amado

3    interpreted the results of Dr. Martin's exam as detecting no signs of major mental illness, "the

4    opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that

5    justifies the rejection of an opinion of an examining or treating physician." *Morgan v. Comm'r of*

6    *Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999).  Accordingly, Dr. Amado's contrary opinion

7    is not a legitimate ground for discounting Dr. Wiebe's opinion.

8                  3.    Dr. Peterson

9        The ALJ only partially credited the conclusions of Dr. Peterson, a consultant hired by the

10   Social Security Administration.  The ALJ credited Dr. Peterson's characterization of the Wiebe

11   and Martin examinations as "overstatements and inconsistent with objective findings."  *Id.* at

12   2479.  However, the ALJ dismissed Dr. Peterson's conclusion that Plaintiff had moderate

13   limitations as "unsupported".  *Id.*  The ALJ concluded that "Dr. Peterson's assessment warrants

14   more weight than either Dr. Wiebe or Dr. Martin, but it does not warrant great weight.  There is

15   simply too little evidence to demonstrate that mental impairments limited the claimant on a

16   continuous basis."  *Id.* at 2480.

17       Like Dr. Amado, Dr. Peterson did not examine Plaintiff.  AR at 2516.  "An ALJ may reject

18   the testimony of an examining, but non-treating physician, in favor of a non-examining,

19   nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons

20   are supported by substantial record evidence."  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir.

21   1995).  Here, the reason the ALJ gave for crediting Dr. Peterson's opinion—inconsistency of the

22   Wiebe report with the objective findings—is not particularly specific.  The Court also has

23   concerns about the legitimacy of this ground, as Dr. Peterson does not appear to have treated Dr.

24   Wiebe's clinical interview findings as "objective," which they are under *Buck*.  *Compare* AR at

25   2520 (no "objective basis" for marked impairment for changes and stress) *with* AR at 1653, 1656

26   (Dr. Wiebe diagnoses Plaintiff with "severe anxiety" based on the Beck Anxiety Inventory, notes

27   "having a fear of the worst happening" as one of Plaintiff's symptoms, and opines based on

28   MCMI-III results that Plaintiff "may be apprehensive about trivial matters").  Further, Dr.

13

Peterson's testimony indicates a belief that Dr. Wiebe opined "marked difficulty for persistence" without support in the record, *id.* at 2520, but Dr. Wiebe made no finding concerning persistence. *Id.* at 1661–62.[7] For these reasons, the ALJ failed to offer "specific and legitimate" grounds for discounting Dr. Wiebe's analysis based on Dr. Peterson's.

In light of the foregoing, the ALJ provided no specific and legitimate reason supported by substantial evidence for discounting Dr. Wiebe's conclusions.

**INSTRUCTIONS ON REMAND**

This case is a poster child for the proverbial "'heads we win; tails, let's play again' system of disability benefits adjudication" which the Ninth Circuit's credit-as-true rule is designed to avoid. *Garretson*, 759 F.3d at 1021–22. It has generated three ALJ opinions, each of which has warranted a district court opinion reversing its decision for failure to properly consider Dr. Wiebe's testimony. Although the first two judges to consider the issue declined to apply the credit-as-true rule in the context of Dr. Wiebe's testimony, choosing instead to allow the ALJ to reevaluate the record in light of their opinions, the ALJ's repeated errors in evaluating this testimony have convinced this Court that it is appropriate to direct that Dr. Wiebe's testimony be credited as true on remand. *See, e.g.*, *Aparicio B. v. Comm'r of Soc. Sec.*, 2022 WL 799404, at *6 (N.D. Cal. Mar. 16, 2022).

Dr. Wiebe opined that Plaintiff had two marked limitations: in responding appropriately to changes in a routine work setting or dealing with normal work stressors,[8] which falls under Criterion B4 (adapting or managing oneself), and in completing a normal workday and workweek

---

[7] To the extent that Dr. Peterson was speaking about Dr. Wiebe's finding of a marked limitation in completing a normal workday or workweek without interruption from psychologically-based symptoms, which is a component of the broader "Concentrate, persist, or maintain pace" paragraph B criterion, the Court has already explained that some of Dr. Wiebe's findings describe symptoms that could cause such interruptions.

[8] Dr. Wiebe selected both the "moderate" and "marked" boxes for the aptitude category of "Respond appropriately to changes in a routine work setting and deal with normal work stressors". AR at 1662. However, "responding to demands; adapting to changes; [and] managing your psychologically based symptoms" are categorized as Paragraph B(4) criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. E, (4). And for paragraph B4, "the greatest degree of limitation of any part of the area of mental functioning directs the rating of limitation of that whole area of mental functioning." *Id.* at Pt. F, (3)(f). In other words, to the extent that Plaintiff has a marked impairment in either responding appropriately to changes or dealing with normal work stressors, she is considered to have a marked limitation in adapting or managing herself.

without interruptions from psychologically based symptoms, which falls under Criterion B3 (concentrating, persisting, or maintaining pace). AR at 1662. Accordingly, Plaintiff has a marked limitation in two of the Paragraph B criteria. Further, Dr. Wiebe's clinical interview of Plaintiff (and the medical record as a whole) documents that Plaintiff displayed six symptoms of depression under Paragraph 12.04A: depressed mood, appetite disturbance with change in weight, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and thoughts of death. Because Plaintiff displays five or more Paragraph A symptoms and marked limitations in two Paragraph B criteria, she meets Listing 12.04 for depressive disorder. Taking Dr. Wiebe's report as true, the ALJ is required to find a disability at Step 3.

Accordingly, the Court will remand this matter for a determination of the date on which Plaintiff first became disabled due to either her mental illness or a combination of mental illness and other symptoms. That date should be no later than October 26, 2015, the date on which Plaintiff was examined by Dr. Wiebe. "The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent" Plaintiff from engaging in substantial gainful activity for a continuous 12 months or more. SSR 83-20. Because the date of onset will need to be inferred, the ALJ "should call on the services of a medical advisor" to help make this determination. *Id.* The ALJ should also seek Plaintiff's permission to obtain information from her family members about the course of her condition. *Id.*

## CONCLUSION

For the reasons stated above, the court finds that the ALJ's decision was not supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment is GRANTED IN PART and Defendant's Cross-Motion is DENIED. This case is remanded for further proceedings consistent with this order. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: September 25, 2024

ROBERT M. ILLMAN
United States Magistrate Judge